[825 NE2d 117, 791 NYS2d 876]

QUANTUM CORPORATE FUNDING, LTD., Respondent, v WESTWAY INDUSTRIES, INC., Defendant, and UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant.

Argued January 11, 2005; decided February 17, 2005

## POINTS OF COUNSEL

*Westermann Hamilton Sheehy Aydelott & Keenan, LLP,* Garden City (*David Westermann, Jr.* of counsel), for appellant. I. The language of State Finance Law § 137 controls—assignees are excluded. (*Mowczan v Bacon,* 92 NY2d 281; *Riley v County of Broome,* 95 NY2d 455; *Specialty Prods. & Insulation Co. v St. Paul Fire & Mar. Ins. Co.,* 99 NY2d 459; *Chittenden Lbr. Co. v Silberblatt & Lasker,* 288 NY 396; *Tri-State Empl. Servs. v Mountbatten Sur. Co.,* 99 NY2d 476; *People v Backus,* 117 NY 196; *Uvalde Asphalt Paving Co. v City of New York,* 191 NY 244; *Davis Acoustical Corp. v Hanover Ins. Co.,* 22 AD2d 843; *Windsor Metal Fabrications v General Acc. Ins. Co. of Am.,* 94 NY2d 124; *Jackson v Citizens Cas. Co. of N.Y.,* 277 NY 385.) II. There is a conflict between *Quantum Corporate Funding v Fidelity & Deposit Co. of Md.* (258 AD2d 376 [1999]) and *Quantum Corporate Funding v Westway Indus.* (303 AD2d 483 [2003]). (*People ex rel. Makin v Wilkins,* 22 AD2d 497; *Specialty Prods. & Insulation Co. v St. Paul Fire & Mar. Ins. Co.,* 99 NY2d 459; *Chittenden Lbr. Co. v Silberblatt & Lasker,* 288 NY 396; *Aquilino v United States,* 10 NY2d 271; *Canron Corp. v City of New York,* 214 AD2d 115.) III. State Finance Law § 137 bond rights are not commercial collateral. (*Messersmith v American Fid. Co.,* 232 NY 161; *Jackson v Citizens Cas. Co. of N.Y.,* 277 NY 385.)

*Hancock & Estabrook, LLP,* Syracuse (*Stewart F. Hancock, Jr.*

and *Alan J. Pierce* of counsel), for respondent. I. State Finance Law § 137 should not be construed as precluding the right of an assignee of a subcontractor to proceed against the surety; a contrary holding would effectively curtail the rights of subcontractors to obtain financing by assigning their accounts receivable. (*Matter of Mittleman,* 282 App Div 587; *Chittenden Lbr. Co. v Silberblatt & Lasker,* 288 NY 396; *City Bank Farmers' Trust Co. v New York Cent. R.R. Co.,* 253 NY 49; *Stillman v Northrup,* 109 NY 473; *Claflin v Ostrom,* 54 NY 581; *Craig v Parkis,* 40 NY 181; *Transit Commn. v Long Is. R.R. Co.,* 253 NY 345; *Goncalves v Regent Intl. Hotels,* 58 NY2d 206; *Parker v Hoefer,* 2 NY2d 612; *Bertles v Nunan,* 92 NY 152.) II. United States Fidelity and Guaranty Company's arguments that State Finance Law § 137 payment bonds should not be assignable are without merit. (*Speciality Prods. & Insulation Co. v St. Paul Fire & Mar. Ins. Co.,* 99 NY2d 459; *United States for Benefit of Sherman v Carter,* 353 US 210; *Wolther v New Hampshire Fire Ins. Co.,* 173 F Supp 529; *Orinoco Realty Co. v Bandler,* 233 NY 24; *R.J. Russo Trucking & Excavating v Pennsylvania Resource Sys.,* 169 AD2d 239; *Dutchess Quarry & Supply Co. v Firemen's Ins. Co.,* 190 AD2d 36; *Scaccia Concrete Corp. v Hartford Fire Ins. Co.,* 212 AD2d 225.)

*Wolff & Samson PC,* New York City (*Adam P. Friedman* of counsel), for Surety Association of America, amicus curiae. A lender-assignee is not a proper claimant against the labor and material payment bond mandated by State Finance Law § 137. (*Caristo Constr. Corp. v Diners Fin. Corp.,* 21 NY2d 507; *Brewster Shirt Corp. v Commissioner of Internal Revenue,* 159 F2d 227; *GMAC Commercial Credit LLC v Springs Indus., Inc.,* 171 F Supp 2d 209; *American Blower Corp. v James Talcott, Inc.,* 18 Misc 2d 1031, 11 AD2d 654, 10 NY2d 282; *Tri-State Empl. Servs. v Mountbatten Sur. Co.,* 99 NY2d 476; *Leader v Maroney, Ponzini & Spencer,* 97 NY2d 95; *People v Mobil Oil Corp.,* 48 NY2d 192; *United States v Munsey Trust Co.,* 332 US 234; *Dutchess Quarry & Supply Co. v Firemen's Ins. Co.,* 190 AD2d 36; *Specialty Prods. & Insulation Co. v St. Paul Fire & Mar. Ins. Co.,* 287 AD2d 852, 99 NY2d 459.)

*Goetz Fitzpatrick LLP,* New York City (*Bernard Kobroff* of counsel), for Subcontractors Trade Association, Inc., amicus curiae. An assignee of a proper claimant on a labor and material payment bond required by State Finance Law § 137 is itself a proper claimant. (*Chittenden Lbr. Co. v Silberblatt & Lasker,* 288 NY 396; *Matter of Asman v Ambach,* 64 NY2d 989; *Triangle*

*Erectors v James King & Son,* 41 Misc 2d 12; *United States for Benefit of Sherman v Carter,* 353 US 210; *Caristo Constr. Corp. v Diners Fin. Corp.,* 21 NY2d 507; *American Blower Corp. v James Talcott, Inc.,* 10 NY2d 282; *Tri-State Empl. Servs. v Mountbatten Sur. Co.,* 99 NY2d 476; *Tri-City Elec. Co. v People,* 96 AD2d 146, 63 NY2d 969; *R.J. Russo Trucking & Excavating v Pennsylvania Resource Sys.,* 169 AD2d 239; *Specialty Prods. & Insulation Co. v St. Paul Fire & Mar. Ins. Co.,* 99 NY2d 459.)

### OPINION OF THE COURT

ROSENBLATT, J.

We hold today that State Finance Law § 137 allows subcontractors' assignees to recover payment from bond sureties. The statute requires general contractors on public works projects to purchase payment bonds, which work like insurance policies designed to guarantee payment to the general contractors' suppliers, employees and subcontractors. The statute is silent, however, on who may sue on the bond. In our view, section 137 should be read to allow suit by the subcontractor's assignee.

### I.

Atlas Concrete Cutting LLC served as a subcontractor for Westway Industries, Inc., a general contractor hired to complete various public works projects in Westchester and Queens counties. After completing the work, Atlas sold its accounts receivable at a substantial discount to Quantum Corporate Funding, Ltd., for cash up front. Westway then failed to pay its debts and went out of business. To recover on Atlas's claims, Quantum pursued United States Fidelity and Guaranty Company (Guaranty), the surety for the section 137 payment bonds that Westway had purchased.[1]

After Guaranty refused to honor Quantum's demands for the payments due to Atlas, Quantum brought suit in Supreme Court

---

1. This is a suit by a factor against a surety, with the subcontractor and general contractor uninvolved. At least one writer has commented on the nature of this party lineup in the context of structured annuities:

> "The attack [on factoring] has not come from the consumer lobby, though criticism of factoring is often (and sometimes deservedly) clothed in the language of consumer protection. Nor has it come primarily from disgruntled sellers, though many have claimed to stand in their shoes. Instead, the attack has come primarily from the insurance industry . . . . One might reasonably ask why these entities would care, given that their payment obligations would presumably be unaffected by any transfer thereof to a factoring company." (Adam F. Scales, *Against Settlement Factor-*

and obtained a default judgment against Westway, establishing that Atlas's invoices to Westway were proper and payable. Supreme Court, however, granted Guaranty's motion for summary judgment, dismissing Quantum's claims under section 137 against Guaranty in reliance on the Appellate Division, First Department's holding that the subcontractor's right to recover on payment bonds is nonassignable (see *Quantum Corporate Funding v Fidelity & Deposit Co. of Md.*, 258 AD2d 376 [1st Dept 1999]).

On appeal, the Appellate Division, Second Department, reversed the dismissal, acknowledging that its holding conflicts with the First Department's decision in *Fidelity*. Quantum then won summary judgment in Supreme Court. To resolve the split between Appellate Division departments, we granted Guaranty's motion for leave to appeal directly to this Court (see CPLR 5602 [a] [1] [ii]). We now affirm.

## II.

The bonding requirement in State Finance Law § 137 first passed in 1938 to protect laborers and material suppliers from defaulting employers.[2] An additional purpose was to reduce the cost of state projects by encouraging lower-cost bids from contractors (see Governor's Counsel's Mem to Governor, Bill Jacket, L 1938, ch 707, at 3 ["Those (contractors) who do (undertake state work) materially raise their bids in order to allow for outside financing pending the receipt of the state moneys."]).

---

*ing? The Market in Tort Claims Has Arrived*, 2002 Wis L Rev 859, 900-901.)

2. In relevant part, section 137 provides the following:

"1. [The Comptroller or other appropriate public official may] nevertheless require prior to the approval of any [public works] contract a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract. . . .

"3. Every person who has furnished labor or material, to the contractor or to a subcontractor of the contractor, in the prosecution of the work provided for in the contract and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished by him for which the claim is made, shall have the right to sue on such payment bond in his own name for the amount, or the balance thereof, unpaid at the time of commencement of the action . . . ."

The bond requirement guarantees that subcontractors will receive payment for their work once they complete the project. That assurance is not always enough. Some subcontractors, often smaller or newer companies, may have difficulty financing their work even before the job is done. For example, a gravel company working on a six-month project might run out of gravel after three months. If it lacked the means to obtain more gravel, the company would be unable to complete its contract obligations. Subcontractors in that position seek to trade their certain right to future payment in exchange for present financing.

Similarly, small subcontractors who have completed projects and await payment may be ill equipped to pursue their payment claims, preferring not to spend limited company resources on the extra paperwork and potential litigation costs connected with such claims. Such companies, like Atlas here, have therefore sold their accounts receivable to factors, companies that specialize in financing and collecting these payments (*see* Black's Law Dictionary 630 [8th ed 2004]; *see also* James J. White, A Symposium on the Code After 25 Years: 1978-2003, *Death and Resurrection of Secured Credit*, 12 Am Bankr Inst L Rev 139, 153-154 [2004]).

Whether parties may sell an enforceable right to receive payments under bonds required by section 137 is an open question before this Court. In construing the statute, we bear in mind the background principle that claims typically remain transferrable (*see* General Obligations Law § 13-101 ["Any claim or demand can be transferred . . . ."]; *see also* Restatement [Second] of Contracts § 317 [2] [setting transferability of rights as the default and outlining narrow exceptions]). As a second guiding principle, we note that the original section 137 and every subsequent amendment were designed to protect workers, material suppliers and subcontractors from the hardship that accompanied the previous instability in the financing of public works (*see e.g. Spanos Painting Contrs., Inc. v Union Bldg. & Constr. Corp.*, 334 F2d 457, 459 [2d Cir 1964] ["The primary purpose of § 137 . . . is to provide subcontractors a remedy by which they may recover sums due them where they would have failed under the old, more stringent lien law."]).[3]

---

**3.** In arguing against the transferability of payment rights, Guaranty attempts to identify its position with increased protection of the statutory beneficiaries. We do not understand, however, how offering subcontractors like Atlas both the substantive benefit *and* the right to sell that benefit is less

Guaranty argues that, despite the law generally favoring transferability, an exception applies in this case. Guaranty asserts that a subcontractor's right under Lien Law article 2 (to place a lien on the general contractor's proceeds) is *not* assignable, and argues that the same restriction should apply to bonds under section 137. We are not persuaded. As Guaranty and amicus Surety Association of America acknowledge, section 137 is aimed at providing *greater* protection to laborers, suppliers and subcontractors than the Lien Law. To adopt Guaranty's analogy would set the statutory beneficiaries back to the financial inflexibility and risk they endured before section 137's passage.

Guaranty also argues that by explicitly granting labor trustees the right to stand in place of the actual workers, suppliers and subcontractors under section 137 (5) (b),[4] the Legislature intended to make that grant exclusive. The better interpretation is that the clause is the Legislature's way of allowing parties not directly connected to the project to sue on behalf of the named statutory beneficiaries. If the Legislature wanted to exclude those with merely a financial interest in the work performed from collecting on behalf of the statutory beneficiaries, it would not have expressly allowed labor representatives to sue. The text itself points to this interpretation: by defining what claims are recoverable with the phrase "payable to or on behalf of" the workers, section 137 (5) (b) explicitly authorizes that some payments will go to parties acting "on behalf of" the direct statutory beneficiaries.

Guaranty argues that affirmance would not be consistent with the legislative goal of reducing the cost of state projects, because sureties would have to raise the premiums charged for

protective of them than denying one of those rights. Indeed, the Subcontractors Trade Association, Inc., has argued as amicus that the protected parties would obviously prefer both rights over just one. Guaranty has not shown us that the subcontractors do not know what is best for themselves. Of course, this issue is only one component of our analysis.

4. The statute reads,

"The expression 'moneys due to persons furnishing labor to the contractor or his subcontractors' includes all sums payable to or on behalf of persons furnishing labor to the contractor or his subcontractors, . . . payment of which is required . . . by the contract in connection with which the bond is furnished . . . . A trustee or other person authorized to collect such payments shall have the right to sue on the payment bond in his own name and subject to the same conditions as if he were the person performing the labor upon which such sums are computed."

bonds to cover the increased risk. Subcontractors and Quantum counter that sureties set the price of the bond *before* the general contractor begins work on the project, because having the bond is a prerequisite to hiring the subcontractors. In determining the risk that the bond will be paid out (i.e., that the general contractor will fail to make all necessary payments), the surety evaluates solely the risk posed by the general contractor, not the financial health of the laborers, suppliers and subcontractors. Therefore, the subcontractors assert, whether the eventual claimant turns out to be either Atlas or Quantum makes no difference to the price the surety establishes at the start of the project.

The sureties argue, in effect, that by having to pay out money rightfully due to those who earned it—and who are entitled to it by statute—the sureties will have to raise rates because they are no longer able to keep that money. Given the Legislature's avowed interest in protecting suppliers, workers and subcontractors, we will not construe the statute in the manner suggested by Guaranty.

Nor do we find merit in Guaranty's related contention that making sureties liable to factors like Quantum would generally expand the class of claimants, and thereby increase the sureties' risk of payment on the bonds. For the purpose of making a claim on the bond, the factor stands in the shoes of the subcontractor. Here, Quantum submitted for payment the very same invoices created by Atlas, on Atlas letterhead and authorized by Atlas officials, with the only indication of Quantum's role being a stamped statement that Atlas had assigned the accounts to Quantum. Quantum seeks no more money than Atlas would have been entitled to, nor could it. Any defenses that Guaranty might have had against Atlas were good against Quantum.

In sum, the only apparent reason Quantum might pose a greater threat to Guaranty than Atlas is that Quantum is more efficient at collecting bill payments than Atlas would have been. The statute does not allow sureties to resist payment merely because some of section 137's beneficiaries are too economically weak to recover on their deserving and lawful claims against the bonds.[5]

---

**5.** We are comforted in this conclusion by the continued successful functioning of public works and the surety market in those jurisdictions that

Accordingly, the judgment of Supreme Court appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.

---

have maintained long-standing rules allowing for assignments. For example, the federal analogue to our section 137, 40 USC § 270a *et seq.* (now 40 USC § 3131 *et seq.*), allows for assignment of subcontractors' claims (*see United States for Benefit of Sherman v Carter*, 353 US 210 [1957]), as do the statutory analogues of our sister states (*see e.g., Shoshoni Lbr. Co v Fidelity & Deposit Co. of Md.*, 46 Wyo 241, 24 P2d 690 [1933]; *Finch v Enke*, 54 SD 164, 222 NW 657 [1929]).